# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

TOMAS ZAVALIDROGA, individually
and as Power of Attorney for Margaret
Zavalidroga,

                              Plaintiffs,

                                        6:17-CV-682
         v.                              (BKS/ATB)

THERESA GIROUARD, et al.,

                              Defendants.

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a civil rights complaint, together with an application to proceed in forma pauperis ("IFP") filed by pro se plaintiff Thomas Zavalidroga ("TZ"), "Individually and as Power of Attorney [for] Margaret Zavalidroga" ("MZ") (Complaint ("Compl.")) (Dkt. No. 1).

## I.   Facts

TZ begins the complaint, describing an incident on July 18, 2014, when MZ was "found missing from her car . . . and remained unaccounted for until July 21, 2014." (Compl. ¶ 3). TZ alleges that "[a]fter extensive investigation and through court testimony and records, Oneida County and Madison County law enforcement, social services, and medical personell [sic] have . . . been implicated in her disappearance." (*Id.*) Plaintiff complains that MZ has been drugged, confined to a home,[1] and the

---

[1] Defendant Heritage Home, a nursing home in Oneida County. (Compl. ¶ 2).

subject of a "fraudulent guardianship action which ultimately resulted Zavalidroga's person and property being put under control of the State and organized crime entities." (Compl. ¶ 4). TZ also complains that MZ's guardianship was used to "unlawfully deprive [TZ] of his rights and property." (*Id.*)

The complaint lists twenty-one defendants, including Judge Samuel Hester[2] and MZ's court-appointed guardian Theresa Girouard and her alleged "Guardianship evaluators," Charles Massoud-Tastor and Stuart Finer. (Compl. ¶¶ 5-6). TZ has focused on the alleged deprivation of "his" property by defendant Girouard, when she allegedly hired realtors,[3] a logging company, individual loggers, land auctioneers, and a representative of a land acquisition firm to "take possession of" and sell property belonging to MZ, and allegedly to TZ. (Compl. ¶¶ 10-14). TZ claims that social workers from the defendant Heritage Home were part of a conspiracy to keep MZ drugged and isolated so that the "looting of Zavalidroga's estate and the facility's enrichment" could continue.[4] (Compl. ¶ 10). Plaintiff TZ claims that, in 2014,

---

[2] Judge Hester is the New York State Supreme Court Justice who presided over MZ's guardianship action.

[3] TZ refers to these defendants as "relators," but it is apparent that he means "realtors." (Compl. ¶ 2).

[4] These alleged actions included taking possession of and selling two cars "belonging to the Zavalidrogas" and "fraudulently acquiring legal fees, which were paid to defendant Girouard from the "unlawful sale of the Zavalidroga's [sic] assets." (Compl. ¶ 10). Plaintiff TZ also alleges that in mid-2015, defendant Girouard "unlawfully moved" to sell real estate and lumber belonging to "both" TZ and MZ. (Compl. ¶ 11). Defendant Girouard allegedly "enlisted the assistance" of "land acquisition representative," defendant Nick Polce, who was "not authorized to act in such a capacity under guardianship guidelines. (*Id.*) TZ alleges that Polce had been trying to purchase the Zavalidrogas' property beginning in 2006 and was "known to be associated with a neighboring landowner to the

defendant Hester issued "unlawful decrees purporting to cancel the Power of Attorney contract between [MZ and TZ] and also attempting to seize property titles from [TZ]." (Compl. ¶ 8).

Plaintiff TZ claims that in order to "facilitate" these illegal transfers of property, defendant Girouard employed the assistance of the Oneida County Sheriff's Department, and in particular, defendant Sheriff Robert Maciol. (Compl. ¶ 12). Plaintiff TZ claims that Sheriff Maciol seized the property, "falsely," created Sheriff's titles for the property, and then transferred the property to Girouard. (*Id.*)

Plaintiff claims that from January to April of 2016, defendant loggers John Darling and Donald Spencer knowingly "trespassed" on the Zavalidroga property for the purpose of removing timber from several sections of the property. (Compl. ¶ 14). TZ claims that Girouard "obviously" conspired with defendant Wrightman Bros. Lumber to secure the timber contract "by rigging the bid grossly upward," and using the "illicit" timber contract to "launder extensive funds of an unknown source, in addition to looting and destroying the Zavalidrogas' assets." (*Id.*)

Plaintiff TZ claims that in January of 2016, defendant Girouard "turned to the Town of Annsville and newly-hired codes enforcer [defendant] Nathan Mosely" in an effort to harass TZ and "remove" him from his property. (Compl. ¶ 15). Defendant Girouard allegedly obtained a "fraudulent warrant of eviction" for TZ from defendant

---

Zavalidrogas' property." (*Id.*)

3

Judge Hester.[5]  (*Id.*)  TZ alleges that, notwithstanding the invalidity of the warrant, on February 8, 2016, defendant Mosely and a group of Oneida County Sheriff's deputies, which was "believed" to include defendant Oneida County Sheriff's Deputy Ryan Marshall, "smashed" TZ's door down and proceeded throughout his home "at will," posting a "condemnation notice" and "blocking the doors of the house with padlocks."[6] (*Id.*)

TZ claims that, on February 8, 2016, plaintiff TZ was "alerted" to "unusual activity at his home on Forward Road," in the Town of Annsville. (Compl. ¶ 17).  TZ claims that as he approached his home, he noticed a large number of official vehicles parked on the road, and he noticed a "large Town of Annsville excavator" proceeding toward the area of the "Zavalidroga residences." (*Id.*)  TZ alleges that "several days prior" to this incident, plaintiff was "alerted to possible trouble at the property at a court hearing [during] which defendant Girouard "vowed" to start removing TZ's equipment and belongings from the property, "even in the absence of legal authority." (*Id.*)

Defendant Sheriff's Deputy Ryan Marshall, who was allegedly on TZ's property on February 8, 2016, "supervising the destruction of [TZ's] equipment, prevented

---

[5] Plaintiff TZ also claims that Judge Hester's order directed personal service on TZ, by January 15, 2016 in order for the warrant to be valid, but such service was not "accomplished." (Compl. ¶ 15).

[6] TZ alleges that the defendant Town of Annsville and defendant Mosely's predecessor, defendant Joseph Muller undertook "a campaign" of harassment against the "Zavalidrogas, beginning in 2013," when defendant Muller entered MZ's house to post a "fraudulent condemnation notice and boarded it shut." (Compl. ¶ 16).  Defendant Muller also allowed a neighboring landowner to "illegally subdivide his adjoining property in violation of Town laws." (*Id.*)

plaintiff from approaching the scene, and Deputy Marshall's father and alleged co-conspirator, Rick Marshall,[7] "would" have also been directing Town employees "in the destruction that took place." (Compl. ¶ 18)   TZ states that "Marshall"[8] told TZ that he was going to check to see if there was a current order of protection, forbidding any contact between TZ and his brother John. (*Id.*)

Plaintiff TZ alleges that while "Marshall" was "doing this,"[9] plaintiff saw several State Police cars drive up to the scene, and they questioned TZ. (Compl. ¶ 19).  TZ claims that defendant Marshall walked up to him and falsely stated that TZ was observed walking "up to [his] brother," and arrested TZ, purportedly because he violated an order of protection filed against TZ. (*Id.*)  TZ claims that he never approached his brother, and that Marshall did not have any knowledge of a "certified Order of Protection" which would have been necessary to establish probable cause to arrest TZ.[10]  TZ states that this "blatantly false arrest was processed though the Town of Annsville, and resulted in [TZ] being jailed for almost a month and a half without access to an attorney or the ability to arrange for bail." (Compl. ¶ 20).

---

[7] TZ alleges that defendant Rick Marshall is the Road Supervisor for the Town of Annsville. (Compl. ¶ 18).

[8] It is unclear to which "Marshall" TZ is referring in this sentence.

[9] The court assumes that plaintiff is referring to defendant Marshall "checking" on the protective order.  I have made this assumption because plaintiff alleges that Rick Marshall "would have been" present because he was the Annsville Road Supervisor.  Plaintiff does not allege that he ever saw Rick Marshall or that Rick Marshall ever took any specific action in this case.

[10] Plaintiff TZ alleges that his brother Jon later testified that TZ never approached him on the day in question. (Compl. ¶ 19).

Plaintiff TZ states that "[d]espite the obvious deficiencies in the case, Annsville Town Justice, defendant Paul Tryon "maintained the false prosecution until the present." (Compl. ¶ 21).  Plaintiff claims that he was "recently" told that there was no video footage of the arrest, even though there were five State Police cars present. (*Id.*) Plaintiff claims that defendant Girouard and Hester "conspired to produce an unconstitutional order/decree," forbidding TZ to be within 1000 feet of the Forward Road address "or the Zavalidroga properties," and placing all property under Girouard's control. (Compl. ¶ 22).  TZ claims that, despite many attempts to secure his tractors, equipment, and personal property which were at the "residences," Girouard, Hester, and area law enforcement officials "set about to ignore and thwart such attempts and simply confiscated or destroyed [TZ's] possessions over a period of weeks." (*Id.*)

Plaintiff TZ claims that while he was "jailed on related matters," Girouard "and her privies" reported that the "intentionally unsecured" Zavalidroga residences were burglarized and vandalized, and that one of the residences had been severely damaged by a dropped tree. (Compl. ¶ 23).  TZ claims that, in September of 2016, and in the beginning of "this year," defendant Girouard "conspired" with area realtors - defendants Stephanie Messier, Gretchen Loomis, and Micheal Miner - to unlawfully auction and sell the Zavalidroga "parcels" when they did not possess legal title to the property. (Compl. ¶ 24).  Defendant Messier allegedly "committed felonies" when she set up a "fraudulent" inter-state, on-line auction for the parcels, defrauding potential

out-of-state buyers. (Compl. ¶ 25).  Defendant Messier also allegedly "was instrumental" in creating conditions[11] that led to the "staged looting and vandalism of the Zavalidroga houses." (*Id.*)  Finally, plaintiff claims that defendants Loomis and Miner "also committed felonies" when they conspired to sell some of the Zavalidrogas' parcels, "knowing that Girouard had created unlawful, forged titles to the properties." (Compl. ¶ 26).

The complaint contains four causes of action. (Compl. ¶¶ 27-30).  Plaintiff TZ's first cause of action is under 42 U.S.C. §§ 1981, 1983, and 1985, allegedly for deprivation of property interests, federal interests, and "discrimination in general." (Compl. ¶ 27).  Plaintiff TZ's second cause of action is purportedly pursuant to the First, Fourth, Fifth, Sixth, and Fourteenth Amendments based on the deprivation of liberty and property interests by all defendants. (Compl. ¶ 28).  Plaintiff TZ's third cause of action raises State law claims of false arrest, false imprisonment, trespass, and conversion of property. (Compl. ¶ 29).  Plaintiff's fourth cause of action is pursuant to the "International Covenant on Civil and Political Rights." (Compl. ¶ 30).

Plaintiff TZ seeks substantial monetary relief, together with injunctive relief which would put TZ "in a position that he would have been . . . had there been no violation of his rights, including a restoration of all contracts between [TZ] and [MZ]." (Compl. at p.9).  Plaintiff TZ also asks for MZ's immediate release "from custody."

---

[11] These "conditions" were allegedly "large crowds." (Compl. ¶ 25).

(*Id.*)  TZ requests injunctive relief and a "declaratory judgment" against defendant Town Court Justice Paul Tryon and the "Annsville Town Court," preventing further "harrasing [sic], bad faith prosecution" of plaintiff TZ. (*Id.*)  TZ also asks for an order enjoining the defendants' possession and/or sale of TZ's property, and monetary damages for the loss of or damage to, said property. (Compl. at pp.9-10).

## II.   <u>IFP Application</u>

In order to proceed IFP in federal court, the court must be satisfied by plaintiff's affidavit that he is unable to pay the "cost of these proceedings." (Dkt. No. 2); 28 U.S.C. § 1915.  In this case, plaintiff has used the "Short Form" application to proceed IFP. (*Id.*)  The court notes that plaintiff Thomas Zavalidroga ("TZ") has brought several actions in this court, most of which have been dismissed. *See Zavalidroga v. Cote*, No. 6:09-CV-225 (DNH/ATB) (closed 1/19/10);[12] *Zavalidroga v. Oneida County Sheriff's Dep't*, No. 6:11-CV-277 (NAM/DEP) (closed 6/17/14)[13]; *Zavalidroga v. Cuomo*, No. 6:11-CV-831 (NAM/ATB) (closed 8/1/12);[14] *Zavalidroga v. Oneida County Dep't of*

---

[12] Plaintiff and his co-plaintiff MZ attempted to appeal the district court's dismissal of this complaint, but the Second Circuit affirmed the dismissal and denied the appeal on November 24, 2010. (Dkt. No. 79).

[13] Plaintiff and MZ also appealed the district court's dismissal of this action.  The Second Circuit denied IFP and plaintiffs' request for injunctive relief, finding that the appeal "lacks an arguable basis either in law or in fact." (Dkt. No. 165).

[14] TZ made attempts to reopen and/or appeal the dismissal of this action.  The District Court denied reopening, and the Second Circuit denied and dismissed plaintiff's appeal on February 12, 2015. (Dkt. No. 44) (Second Circuit Mandate).

*Adult Protective Svcs.*, No. 14-CV-1273 (GTS/TWD) (closed Dec. 18, 2015)[15]. *See also*

*Zavalidroga v. Madison County*, No. 5:17-CV-117 (DNH/TWD).[16] The court also notes

that plaintiff(s) has/have paid the filing fee in the past.

In this case, plaintiff TZ alleges that he is unemployed, and that he has "zero"

income from "any" sources. (*Id.*)  Plaintiff TZ also states that he has some items which

total $1,000.00 in value, has $20.00 in a checking or savings account, he has "zero"

monthly expenses, no persons dependent upon him, and no financial obligations. (*Id.* at

1-2).  If plaintiff TZ's statements are correct, it is unclear how he lives and/or eats.  It is

difficult to believe that he receives no money from no sources such as public assistance

or some other form of assistance, whether it be from family or otherwise.  Thus, this

court has serious doubts about whether plaintiff TZ's IFP application is correct or

complete.  However, because the court finds that this complaint may be dismissed on

various other bases, the court will find that plaintiff TZ is financially eligible to proceed

IFP.

## II.    <u>Representation</u>

Although the first paragraph of this civil rights complaint states that "[t]his is a

---

[15] Plaintiff and MZ appealed this case to the Second Circuit.  On May 26, 2016, the Second Circuit denied a motion for appointment of counsel and dismissed the plaintiffs' notice of appeal. (Dkt. No. 32).  On October 13, 2016, TZ filed a motion to amend, which was denied on October 18, 2016. (Dkt. Nos. 35, 36).

[16] An Order and Report-Recommendation was filed on April 14, 2017, *recommending sua sponte* dismissal of all but TZ's claims against the Madison County Jail relating to the conditions of confinement. (Dkt. No. 14).  Plaintiff TZ has filed objections to the Magistrate Judge's recommendations. (Dkt. Nos. 15, 16).

civil rights Complaint for declaratory, monetary, and injunctive relief brought by

**plaintiff Tomas Zavalidroga, appearing pro se**," the caption of the complaint states

that TZ is bringing this action "individually and a Power of Attorney [for MZ]."

(Compl. at p.1) (emphasis added).  MZ has not signed the complaint, nor has she filed

an IFP on her own behalf.[17]

Plaintiff TZ has been told that he cannot represent the interests of anyone but

himself, and he may not bring an action as "Power of Attorney" for anyone without

obtaining an attorney.  *See Zavalidroga v. Oneida County Dep't of Adult Protective*

*Svcs. supra* at 5 (citing *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010)

(recommending dismissal of TZ's attempts to bring an action on behalf of MZ)).

The law has not changed in this regard.  It is well-settled that a person who has

not been admitted to practice law may not represent anyone other than himself.[18]

*Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

TZ may bring claims that relate to his own interests or his own injuries.  To the extent

that any of the claims that TZ is attempting to bring in this action relate to MZ, the

claims may not proceed unless MZ has counsel or a guardian ad litem.  Therefore, the

---

[17] It appears from other information in this, and plaintiff TZ's other complaints that MZ is no longer competent to sign on her own behalf.  It is also clear that TZ is no longer Power of Attorney for MZ. *See Zavalidroga v. Oneida County Dep't of Adult Svcs., supra* (Dkt. No. 23 at 5) (MZ has a court-appointed guardian).  In this case, as discussed below, TZ states that in 2014, defendant Hester cancelled TZ's power of attorney. (Compl. ¶ 8).

[18] A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).  The exception is not applicable to this case.

court will consider each plaintiff separately for purposes of determining how this action

may proceed.[19]

### A.    MZ

Clearly, TZ may not represent MZ.  Complicating this issue is the fact that it also

appears that MZ may not represent herself as she has in the past.  A minor or

incompetent person normally lacks the capacity to bring suit for herself. *James v. New*

*York*, 415 F. App'x 295, 296 (2d Cir. 2011) (citing *Berrios v. N.Y.C. Housing Auth.*,

564 F.3d 130, 134 (2d Cir. 2009)). *See also* N.Y. Civ. Prac. L. & R. § 1201; Fed. R.

Civ. P. 17(b)(1) (capacity of an individual is determined by the law of the individual's

domicile).  Pursuant to Fed. R. Civ. P. 17(c)(2), the federal court must appoint a

guardian ad litem - "or issue another appropriate order" - to protect an unrepresented

minor or incompetent person. *Id.* (quoting Fed. R. Civ. P. 17(c)(2)).

In *James*, the Second Circuit remanded a case in which the district court

dismissed an incompetent plaintiff's action "with prejudice" without making a

determination as to whether to exercise its inherent power to appoint a guardian ad

litem when it appears that the individual's "general representative" has interests which

may conflict with those of the person that she is supposed to represent. *James, supra.*

---

[19] TZ is confused.  He claims that he may bring this action because he is MZ's power of attorney.  First, it is clear from this complaint, and from the other complaints that plaintiff TZ has filed, that he is no longer MZ's power of attorney as the result of a state court order.  In any event, even if TZ were "power of attorney" for MZ, he could only bring an action as power of attorney if he had a licensed attorney representing him.

On remand, the case was referred to a Magistrate Judge, who ultimately determined that the federal court was precluded by the *Rooker Feldman*[20] doctrine from determining whether plaintiff's state-appointed guardians could not or should not represent her in the federal court action. *James v. New York*, No. CV-10-470, 2013 WL 1873276 (E.D.N.Y. Mar. 6, 2013), *adopted*, 2013 WL 1869564 (E.D.N.Y. May 3, 2013). This in turn precluded the court from otherwise entertaining the plaintiff's complaint. The court dismissed the incompetent plaintiff's complaint without prejudice. *Id.* at *5.

A challenge under the *Rooker Feldman* doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

Four requirements must be met before the court may apply the *Rooker Feldman* doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff

---

[20] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the federal court proceeding. *James,* 2013 WL 1873276, at *2 (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). If these requirements are met, the federal court lacks jurisdiction even if the plaintiff alleges that the state court action was unconstitutional. *Id.* (citations omitted). The "fundamental" question is whether the injury alleged by the federal plaintiff "resulted from the state court judgment itself or is distinct from the judgment." *Id.* (citations omitted). If the federal constitutional claims are "inextricably intertwined" with the state court action, "then in essence the district court would be called on to review the state court decision." *Id.* However, if the plaintiff's claim raises an "independent claim" that is not the result of the state court judgment, but rather denies a conclusion reached by the state court, then federal court jurisdiction exists. *Id.*

In this case, to the extent that MZ is challenging the state court's competency finding, she is barred from doing so under *Rooker Feldman.* The relief section of the complaint asks that this court enjoin defendants[21] from having an further control or contact with MZ and order her immediate release from custody. (Compl. at p.9). The

---

[21] It is unclear to which defendants the complaint is referring. Most of the defendants have nothing to do with MZ's competency determination and would not be in a position to change it. Of the named defendants, only the Judge can change his determination of incompetency.

complaint also contains a request a "restoration" of all the contracts between TZ and MZ. (*Id.*)  In order for this court to grant either one of those requests, it would have to overturn Judge Hester's finding that MZ was not competent and that her contracts with TZ were valid and enforceable.  The same is true if the court were to grant TZ's request that the defendants be enjoined from selling any more of "TZ's" property.

Plaintiff in *James* sought very similar relief.  She claimed that various parties engaged in "a scheme to acquire her property and accomplished this through a guardianship proceeding in state court." *James*, 2013 WL 1873276, at *3.  Plaintiff challenged the state court adjudication, the appointment of guardians, the approval of the subsequent sale of her property, the adequacy of her legal representation, and the management of the proceeds of the sale of her property. *Id.*  Because the plaintiff in *James* was attempting to appeal to the federal court the state court's determination appointing the guardian and approving the sale of her property, her complaint was barred by *Rooker Feldman*. *Id.* at *4.

The court in *James* determined that even though plaintiff was asserting that the state court violated her constitutional rights, her claims were "inextricably intertwined with the state court judgments that she asserts are adverse to her interests." *Id.*  Because the complaint failed for lack of subject matter jurisdiction, the federal court declined to appoint a guardian ad litem in the federal action and instead dismissed the plaintiff's

14

complaint without prejudice.[22] *Id.* at *5.

To the extent that MZ and TZ are attempting to bring an action, challenging the state court's competency finding, the appointment of defendant Girouard, the annulment of her contracts with TZ by Judge Hester, and the subsequent order to sell MZ's property, there is no jurisdiction to do so in this court, and no appointment of a guardian ad litem is necessary. The court will recommend dismissing any claims that pertain to the rights of MZ without prejudice.

Not all of the claims in the complaint relate to MZ or are intertwined with the state court judgment. Thus, the court will proceed to consider the other claims raised by TZ on his own behalf, only some of which are barred by *Rooker Feldman*, as stated above, but which may also be dismissed.

**B.    TZ**

In addition to determining whether plaintiff TZ meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious;

---

[22] The court must also note that James's state court guardians did not wish to pursue the federal action, and in any event, the plaintiff in *James*, was also challenging the conduct of her state-appointed guardians, creating a conflict of interest and preventing them from representing her in the federal action. Thus, the court in *James* analyzed whether to appoint a separate guardian for the federal court action. *James*, 2013 WL 1873276, at *4-5. The court in *James* also stated that, to the extent that plaintiff was seeking a finding that her guardians had engaged in misconduct requiring dismissal, the New York Mental Hygiene Law provided an avenue to seek relief in state court. *Id.* at *4 n.2 (citing inter alia N.Y. Mental Hygiene Law § 81.35).

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff TZ's

16

complaint under the above standards.

## III.  **Judicial Immunity**

### A.    **Legal Standards**

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991).  Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004).  Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  Judicial immunity is immunity from suit, not just immunity from the assessment of damages.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)).  Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in

exercising the authority vested in him or her, "without apprehension of personal consequences. . . ." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### B.   Application

#### 1.   Judges Hester and Tryon

This most recent complaint is merely a restatement of many of the claims that TZ has brought in the past, with some minor modifications and different defendants. Plaintiff has once again named two judges as defendants, albeit different Judges than he has previously sued. TZ's latest judicial defendants are State Supreme Court Justice Hester,[23] who apparently presided over MZ's guardianship and the disposal of some of her assets and Annsville Town Justice Paul Tryon, who is allegedly presiding over TZ's

---

[23] Plaintiff has not named Judge Hester in the past; however, plaintiff has requested injunctive relief from Judge Hester relative to MZ's guardianship proceeding in one of TZ and MZ's previous actions. *See Zavalidroga v. Oneida County Dep't of Adult Protective Svcs.*, 6:14-CV-1273 (Dkt. No. 11).

18

new criminal action.  All of the actions that TZ alleges against both judges were "judicial," and within their respective jurisdictions.  Plaintiff TZ has been told this same thing on various occasions.  He has attempted to sue other judicial defendants, and his claims have been dismissed.  Plaintiff simply does not like the way that the judges preside over their cases, and he believes that all the defendants are conspiring to deprive him of his liberty and property.

As stated above, judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman, supra.*  Judge Hester is presiding over MZ's guardianship, and Town Judge Tryon is apparently presiding over a pending criminal action against plaintiff TZ. (*See* Compl. ¶ 21). Although plaintiff also asks for "injunctive"[24] relief, he has not alleged that "a declaratory decree was violated or declaratory relief was unavailable." *See Bobrowski, supra.* Thus, this complaint may be dismissed as against Judges Hester and Tryon with prejudice, based upon judicial immunity.

### 2.    Court-Appointed Guardians

TZ has named Theresa Girouard, "court-appointed guardian."  TZ makes many

---

[24] Among other requests, plaintiff TZ asks for the "release" of MZ from "custody."  There are many problems with this request, but in addition to the *Rooker-Feldman* bar discussed above, and that plaintiff TZ may not represent MZ's interests, most of the defendants have absolutely no control over MZ's placement in a nursing home, and there has been no showing regarding injunctive relief that would overcome the judicial immunity of Judge Hester regarding his guardianship case.  Plaintiff TZ also asks this court to enjoin his prosecution in Judge Tryon's court and requests that the "contracts" between TZ and MZ be "restored" by Judge Hester.  This court will discuss these requests below.

claims against defendant Girouard, all involving the way she is handling MZ

guardianship, and how she is disposing of MZ's property,[25] which plaintiff TZ believes

to be his property, based on "contracts" that he had with MZ, apparently invalidated by

Judge Hester.  The case must be dismissed as against defendant Girouard for two

reasons.  First, as a court-appointed guardian, she is entitled to quasi-judicial immunity

from suit. *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 528 (E.D.N.Y. 2010), *aff'd*,

434 F. App'x 32 (2d Cir. 2011). *See also Yapi v. Kondratyeva*, 340 F. App'x 683, 684-

85 (2d Cir. 2009) (guardian entitled to quasi-judicial immunity when acting as an arm

of the court).

In *Yapi*, the Second Circuit stated that the "law guardian and her director were

entitled to quasi-judicial immunity." 340 F. App'x at 83.  In this case, TZ has also

named Charles Massoud-Tastor and Stuart Finer, who plaintiff TZ calls "Guardianship-

evaluators." (Compl. ¶ 3).  The only claim that TZ makes against Massoud-Tastor and

Finer is that the "Guardianship was allowed to proceed unfettered by those who were

charged to monitor the action." (Compl. ¶ 6).  TZ also states that Massoud-Tastor failed

to read the "contents of the Guardianship to MZ and did not properly apprise her of her

right to an attorney," or her right to a jury trial. (*Id.*)  Then TZ states that Hester "and

---

[25] The court notes that in *Zavalidroga v. Oneida County Dep't of Adult Protective Svcs*, 6:14-CV-1273, plaintiffs TZ and MZ moved for a temporary restraining order and injunctive relief to try to stop Ms. Girouard from taking title of real property away from TZ, logging the property, and selling the property. (Dkt. No. 11 in 14-CV-1273).  The motion was denied on May 19, 2015 by Chief Judge Glenn Suddaby. (Dkt. No. 13 in 14-CV-1273).  In this case, plaintiff TZ is still complaining about the same property.

others" arranged for Girouard's and Massoud-Tastor's appointment because they were "known supporters of the homosexual community," and they would be "prejudicial" to MZ because she and TZ were "challenging the same sex marriage issue in the courts." (Compl. ¶ 7). It appears that TZ is suing Massoud-Tastor and Finer in their capacities as supervisors or evaluators of the guardians. To the extent that they are appointed by the court to supervise guardians, they would also be entitled to absolute immunity.[26] Thus, the complaint may be dismissed as against defendants Girouard, Massoud-Tastor, and Finer.

The second reason for dismissal as against defendant Girouard is that a court-appointed guardian does not act "under color of state law" for purposes of a section 1983 action.[27] *Heinemann v. Patchey*, No. 3:16-CV-774, 2017 WL 1115203, at *4-5 (D. Conn. Mar. 24, 2017) (holding that court-appointed administrators, guardians, or conservators for adults do not act under color of state law). It is well-settled that court-appointed attorneys, performing a lawyer's traditional function as counsel to defendants do not act under color of state law. *Id.* This has been extended to guardians appointed

---

[26] In addition, in order to be liable under section 1983, a supervisor must have been personally involved in the alleged constitutional violation, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Other than stating that defendants Massour-Tastor and Finer "allowed" the guardianship to "proceed unfettered," and that Massour-Tastor failed to read the contents of the guardianship to MZ, the claims against these two defendants appear to be based on respondeat superior.

[27] In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant violated his or her constitutional rights while acting under color of state law. *Heinemann*, 2017 WL 1115203, at *4 (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307-323 (2d Cir. 2002)).

for children in family court, and to court-appointed guardians and administrators for adults. *Id.* (citing inter alia *Terry v. County of Suffolk*, 654 F. App'x 5, 5-6 (2d Cir. 2016)). The reason behind this policy is that a court-appointed guardian, conservator, or defense counsel exercises independent professional judgment on behalf of his or her client, so he or she cannot be considered a "state actor." *Id.*. at *4. The fact that an individual is paid with state funds is insufficient to render her a state actor. *Id.*

While private parties may be treated as state actors when they conspire with state actors to violate a plaintiff's constitutional rights, conclusory allegations, lacking any factual foundation, are insufficient to support a claimed conspiracy to violate another's civil rights. *See, e.g., Jackson v. County of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators'")); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

Although plaintiff TZ states that the defendants were "conspiring" to harass TZ and take away his property, it is clear that defendant Girouard was acting in what she believed were the best interests of MZ, pursuant to the court's authority. The fact that defendant Girouard appeared in court in connection with her responsibility to MZ does not create a conspiracy with the judge or any other state actor in executing the judge's orders. Defendant Girouard's actions "in the best interests" of MZ, may not have been

22

in the best interests of TZ, but that does not indicate that defendant Girouard

"conspired" with the state court judge to deprive TZ of his property rights. *See Yapi*,

340 F. App'x at 683 (merely resorting to the courts and being on the winning side of a

lawsuit does not make a party a co-conspirator or a joint actor with the judge). Thus,

the complaint may be dismissed as against defendants Girouard, Massoud-Tastor, and

Finer with prejudice.

## IV.    Private Parties (Section 1983)

### A.    Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the

defendant has violated plaintiff's rights under either the Constitution or laws of the

United States and that the defendant acted "under color of state law." *Rae v. City of

Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official

capacity, "clothed with the authority of state law," or acts under "pretense" of law by

purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12

Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v.

Atkins*, 487 U.S. 42, 49 (1988)). The requirement that the defendant acted under "color

of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at

*2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315

(1981)). Private conduct is simply beyond the reach of section 1983 "'no matter how

discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

## B.    Application

TZ has named Wrightman Lumber Company; John Darling - a logger;[28] Michael Miner and Gretchen Loomis - realtors; Stepanie Messier - a land auctioneer; Nick Polce - a representative of a land acquisition firm; Heritage Nursing Home; and Karen Apfel - a social worker at Heritage Nursing Home. None of these individuals are state actors. Even though they were acting under the authority of Judge Hester's order appointing defendant Girouard, who applied to Judge Hester for an Order to Show Cause, directing the Sheriff to execute deeds, transferring property to Girouard, as guardian, then allowing the property to be evaluated to determine a sale price "before and after a harvest of the trees." (*See Zavalidroga v. Oneida County Dep't of Adult Protective Svcs.*, No 6:14-CV-1273 (Dkt. No. 11 at 6-9) (Emergency Motion with Exhibit from

---

[28] The body of the complaint mentions Donald Spencer, another "logger," as having "trespassed" on the Zavalidroga property, but Mr. Spencer's name does not appear in the list of defendants at the beginning of the complaint. Even if he were listed as a defendant, the complaint would have to be dismissed as against him for lack of state action.

NYS Supreme Court Order to Show Cause signed by Judge Hester). "[T]he mere compliance with a court order does not constitute action under color of state law." *Melnitzky v. HSBC Bank USA*, No. 06 Civ. 13526, 2007 WL 1159639, at *9 (S.D.N.Y. Apr. 18, 2007) (citing *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir. 1969);[29] *Jarvis v. Roberts*, 489 F. Supp. 924 (W.D. Tex. 1980)).

In *Melnitzky v. Lopreto*, the plaintiff was suing over his divorce[30] and the Judge's orders to sell property that plaintiff believed belonged to him. *Melnitzky v. Lopreto*, No. 06 Civ. 13206, 2006 WL 3500016 (S.D.N.Y. Dec. 4, 2006) (dismissing private parties, judges, court officers, and police officers for claims pursuant to both section 1983 and section 1985(3)). *See also Melnitzky v. Jones*, No. 07-CV-7380, 2008 WL 3884361, at *6 (S.D.N.Y. Apr. 21, 2008) (carrying out state court orders does not transform a private entity into a state actor).

In this case, Judge Hester made the competency determination, appointed the guardian, ordered the transfer of the title to the property, and authorized estimates of

---

[29] The citation to *Lockhart v. Hoenstine* that appears in *Melnitzky* "(411 F.3d 455 (2d Cir. 1969)" is incorrect. I have located the proper citation and have inserted it into this opinion. The holding of *Lockhart* is that "any public official acting pursuant to court directive is . . . immune from suit." 411 F.2d at 460 (citations omitted). That is not exactly the proposition for which it is cited in *Melnitzky*, because a "public" official does act under color of state law, even though *Lockhart* states that the official will be immune from suit for following the court's order. *Jarvis* is on point. In *Jarvis v. Roberts*, the court specifically held in the federal context, that a private attorney who merely complied with a court order was not liable for civil damages. 489 F. Supp. at 929.

[30] Similar to plaintiff in this case, Mr. Melnitzky brought many cases, all complaining about the same divorce, but brought against different defendants. The court dismissed Mr. Melnitzky's cases for man of the same reasons that I recommend dismissal herein.

the property, authorized the logging, and the property's subsequent sale. The individuals who were carrying out his authorizations did not act under color of state law. In any event, as stated above, in order to find that these individuals acted improperly, the court would have to determine that Judge Hester's orders were invalid, which is prohibited by *Rooker Feldman, supra.* Thus, this complaint may be dismissed as against private parties Wrightman Bros. Lumber, John Darling, Michael Miner, Gretchen Loomis, Stepanie Messier, Nick Polce, Heritage Home, and Karen Apfel with prejudice.

## V.    Municipalities/Sheriff's Department

### A.    Legal Standards

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 35 (2010)), (Rep.-Rec.)*, adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly. Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

In addition, departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (dismissing claim against the police department); *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (same); *Umhey v. County of Orange*, 957 F. Supp. 525, 530–31 (S.D.N.Y. 1997) (dismissing case against the County Board of Ethics); *Wilson v. City of New York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) (dismissing against police department). Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id*.

*See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y.1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)).

### B.    Application

Plaintiff has named the Oneida County Sheriff's Department as a defendant.  As stated above, "departments" may not be named separately from the municipality in which they exist.  Thus, the Oneida County Sheriff's Department may be dismissed as a defendant, and the court will consider the alleged liability of Oneida County and the Town of Annsville.

In this case, TZ alleges only conduct that was allegedly applicable to him.  He does not claim that there was a policy to deprive him of his constitutional rights.  Without such a policy, no claim for municipal liability is stated.  In any event, the claims against Robert Maciol, the Sheriff of Oneida County are only that defendant Girouard "appealed" to the Sheriff to seize TZ's property titles pursuant to Judge Hester's order.  Judge Hester's Order authorized the Oneida County Sheriff to "execute deeds transferring property from TZ to Girouard. *Zavalidroga v. Oneida County Dep't of Adult Protective Svcs.*, No. 6:14-CV-1273 (Dkt. No. 11 at p.6).  As stated above, "any public official acting pursuant to court directive is . . . immune from suit." *Lockhart*, 411 F.2d at 460 (citations omitted).  Thus, there is no municipal liability, and the Sheriff is entitled to immunity for carrying out the Judge's order.

## VI.    Remaining Defendants: Mosely; Muller; Rick Marshall & Ryan Marshall

The complaint states that defendants Mosely and Muller were involved in an illegal eviction. (Compl. ¶ 15-16).  However, the complaint states that in January of 2016, defendant Girouard "turned to the Town of Annsville and newly-hired codes enforcer, Nathan Mosely in an effort to harass and remove [TZ] from his property." (*Id.*)  Plaintiff TZ states that defendant Girouard applied to Judge Hester for the "fraudulent warrant of eviction," and that Judge Hester issued the order. (*Id.*)  On February 8, 2016, defendant Mosely and a "group" of Oneida County Sheriff's deputies "which was believed to have included" defendant Ryan Marshal, carried out the Judge's order which included "smashing" down the door of TZ's house and going through the home "at will." (*Id.*)  Plaintiff TZ then states that defendant Muller undertook a "campaign of harassment" against MZ when he entered her home "beginning in 2013" and "posted it with a fraudulent condemnation notice." (Compl. ¶ 16).

With respect to any issues involving MZ's rights, the court must dismiss such claims without prejudice because, as stated above, neither TZ nor MZ may proceed on MZ's behalf.  In any event, it is unclear what happened in 2013, and to the extent that it happened prior to June 22, 2014, any claim would be barred by the three year statute of limitations for section 1983 claims.[31]

---

[31] *Owens v. Okure*, 488 U.S. 235, 250  51 (1989) (establishing three year statute of limitations for section 1983 cases in New York).  *See* N.Y. Civ. Prac. L & R. § 214(5).  However, courts have recognized the concept of a continuing violation. *See e.g. Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 210 (S.D. Ohio) (citation omitted).  Under the continuing violation doctrine, if a plaintiff has endured a "continuous practice and policy of discrimination," the statute of limitations may not begin to run until the last

To the extent that TZ is suing defendants Mosely and potentially defendant Ryan Marshall[32] for executing an order issued by Judge Hester, plaintiff's case is barred by *Rooker Feldman*.  Plaintiff TZ does not claim any injury to himself by defendant Muller because the alleged incident in 2013 may have occurred prior to TZ conveying MZ's property to himself.  Thus, the complaint may be dismissed as against defendants Mosely, Muller, and Ryan Marshall (with respect to Judge Hester's warrant of eviction).

Finally, defendants Ryan Marshall and his father Rick Marshall[33] are alleged to have been involved in an incident in which TZ's equipment was being removed from MZ's property and in plaintiff's subsequent arrest for violating an order of protection that TZ states he did not violate. (Compl. ¶¶ 17-21).  TZ alleges only that he was "alerted" to "possible trouble" at the property "during a court hearing," at which defendant Girouard informed TZ that she would begin moving TZ's equipment and belongings from the property on Forward Road, "even in the absence of legal authority." (Compl. ¶ 18).

---

discriminatory act in furtherance of the policy. *Chandrapaul v. City University of New York*, No. 14 Civ. 790, 2016 WL 1611468, at *13 (E.D.N.Y. Apr. 20, 2016) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).  In this case, to the extent that the complaint vaguely states that this "harassment continued" against MZ until 2015, such conclusory statements are insufficient to state a claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

[32] The complaint is unclear about whether Ryan Marshall was part of the group of Oneida County Deputy Sheriffs that executed the eviction warrant as the complaint states that the group "was believed to include" Ryan Marshall. (Compl. ¶ 15).

[33] It is actually very unclear from the complaint whether Rick Marshall was ever present at any point in time.  The complaint alleges that "Rick Marshall, road supervisor for the Town of Annsville "would also have been directing town employees in the destruction that took place." (Compl. ¶ 18). Plaintiff TZ actually appears to have dealt only with Oneida County Deputy Sheriff Ryan Marshall.

Plaintiff alleges only that when he arrived at the property "Ryan Marshall was on site supervising the destruction of the equipment," and he "blocked" TZ from approaching the "excavator." (*Id.*)  Ryan Marshall also allegedly told plaintiff that he was going to check and see if there was a "current Order of protection," forbidding TZ from having any contact with his brother Jon. (*Id.*)  TZ claims that this incident resulted in his false arrest for charges that are currently pending before defendant Tryon in the Town of Annsville. (Compl. ¶¶ 19-20).  Plaintiff appears to allege that he was falsely arrested for those charges and that defendant Tryon "maintained the false prosecution until the present." (Compl. ¶ 21).

To the extent that plaintiff's criminal case is still pending in state court, it is well-settled that federal courts may not interfere with pending state criminal prosecutions, absent some extraordinary circumstance, such as bad faith prosecution, unconstitutional laws, or the lack of adequate process in state court for protecting the plaintiff's rights. *Younger v. Harris*, 401 U.S. 37, 43-54 (1971).  This abstention is appropriate when there is a pending state proceeding, implicating an important state interest, and the state proceeding will afford the plaintiff an adequate opportunity for review of his federal constitutional claims. *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

Even if plaintiff had already been convicted of the charges, a civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily

31

invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

Thus, to the extent that TZ alleges that he was falsely arrested or that the prosecution has "obvious deficiencies, the action must await completion of the state criminal proceedings. To the extent that TZ seeks damages for false arrest or malicious prosecution, if he is convicted, he must wait until the criminal conviction is reversed.

## VI.    Sections 1981 and 1985(3)

### A.    Legal Standards

Civil rights claims against non-governmental (private) defendants may be brought under other statutes such as 42 U.S.C. § 1981 and 1985(3). In order to state a section 1981 claim, the plaintiff must allege that he is a member of a racial minority, the defendant intended to discriminate on the basis of race, and the discrimination must involve one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999) (citing *Milan v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

These enumerated activities include the right to "make and enforce contracts; to sue, be parties, give evidence," and the right to the full and equal benefit of all laws and proceedings for the security of persons and property. *Id.* (quoting 42 U.S.C. § 1981(a)). However, conclusory allegations are also insufficient to state a claim under section 1981. *Dove v. Fordham University*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999) (citations

omitted).  Section 1985 requires a racial or class-based conspiracy to deprive a person or class of persons of the equal protection of the laws. *Carris v. First Student, Inc.*, No. 5:13-CV-923, 2015 WL 5535807, at *27 (N.D.N.Y. Sept. 18, 2015) (citing 42 U.S.C. § 1985(3)).

### B.    Application

Although TZ also purports to bring this civil rights action under sections 1981 and 1985(3), he has failed to even allege that he is a member of a racial minority or that any of the defendants actions, private or otherwise, discriminated against him on that basis.  Thus, any claims under either section 1981 or 1985(3) may be dismissed.

## VII.  International Covenant on Civil and Political Rights ("ICCPR")

Without any explanation at all, the complaint alleges that defendants actions have violated the ICCPR. (Compl. ¶ 30).  However, the Second Circuit has specifically found that the ICCPR does "not create independent rights that are cognizable in this court.  The ICCPR is not self-executing and therefore is not privately enforceable." *Elie v. Holder*, 443 F. App'x 635, 638 (2d Cir. 2011) (citations omitted).  Thus, the complaint in this case may not be brought pursuant to the ICCPR, regardless of plaintiff's allegations.

## VIII.  Supplemental Jurisdiction

### A.    Legal Standards

Federal courts have supplemental jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Kolari v.*

*New York Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006) (citing 28 U.S.C. § 1367(a)).  Supplemental jurisdiction is discretionary, and the district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *Id.* at 122 (citing 28 U.S.C. § 1367(c)(3)).  In making this determination, the court balances judicial economy, convenience, fairness, and comity. *Id.* (citing *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  In *Cohill*, the Supreme Court held that in the usual case in which all the federal law claims are dismissed, the balance of factors will weigh in favor of declining to exercise jurisdiction over the remaining state-law claims. *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7).

**B.    Application**

In this case, the complaint raises various state law claims, including false arrest, false imprisonment, trespass, and conversion of property.  The state law claims are intertwined with the federal claims.  Based on the analysis above, recommending dismissal of all federal claims, this court should decline to consider any of the plaintiff's purported state law causes of action.

**IX.    <u>Opportunity to Amend</u>**

**A.    Legal Standards**

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is

present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

## B.    Application

Plaintiff TZ has been complaining for years about the incidents, resulting either from his conviction or his mother's care, or from the results of the state court's findings regarding her competency, the transfer of her property, and the disposition of that property by her court-appointed guardian. TZ has brought various cases against different defendants. Each case has been dismissed with one minor exception when TZ actually sued over his conditions of confinement. Most of the defendants in this action are entitled to immunity because they are either judicial officers, were appointed to act by the judicial officer, or were acting pursuant to orders issued by a judicial officer. This court finds that any amendment by TZ would be futile, and thus, will recommend that no opportunity to amend be afforded to him.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's TZ's application to proceed IFP is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**RECOMMENDED**, that to the extent that the complaint relates to MZ, that no guardian be appointed, and the complaint be dismissed in its entirety without prejudice, and it is

**RECOMMENDED**, that as it relates to TZ, the complaint be dismissed in its entirety **WITH PREJUDICE** as against all defendants, and it is

35

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 7, 2017

Hon. Andrew T. Baxter
U.S.  Magistrate Judge